v. Holly M. Loud et al, defendants Appalese. Arguing for the appellant, David Drank. Arguing for the Appalese, Karen DeGrande. Thank you. You may proceed. Thank you, Judge. I'd like to start out real quickly. I'm going to be talking about the elephant in the room, if you will, that we should there should have been a directed verdict because there was no autopsy. Um, our expert Dr. Matthew said, even if there's an autopsy, you would not have an absolute and medical experts testimony doesn't need to be to an absolute certainty, only a reasonable degree of medical certainty. And he said with without the autopsy could still testify to a reasonable degree medical certainty that had our client been admitted to the hospital for observation his chances of survival would have improved. Interesting to note is in the Bailey versus Mercy Hospital case. There were two autopsies, and the experts were free to pick and choose which autopsy they wanted to rely on. So, clearly, an autopsy. The cause of death in an autopsy is not dispositive of the cause of death. In that case, Dr Schaefer testifying for the defendant chose to rely on the autopsy. Of course that favor the defendant. So I'm Council, I'm sorry to interrupt but I have some questions concerning cause of death, which you're focusing on but I want to take a little different focus with it. How many proximate causes of death. Are there in this case. Isn't there one. Isn't that what plaintiffs lawyer argued extensively in the instructions conference that there was one proximate cause of death. I, they did argue that there may be one cause of death. I think I are our position is that it was hypertension. That led to a cardiac arrhythmia and heart stoppage. And I don't. I don't think that ruled out possible other causes. Not sure what that refers to. I mean, I'm referring to the record and what was argued below. And so I'm concerned about I want to focus on proximate cause and the instructions that were given at the trial level. And so, given the argument that was made by this attorney that there was one proximate cause of death here that by not hospitalizing the plaintiff that that certainly was the proximate cause of his death, that is the hypertension and his issues could have treated and really surveilled in hospital. So when there is one proximate cause. Isn't that covered under the short form instruction. Well, the proximate cause. I think there's really, there's two, if you will. One, the hypertension causing the cardiac arrhythmia. But another proximate cause is failure to admit him for observation. So that is a separate part proximate cause. So there are actually more than one proximate causes. Well that's so you're taking, you're making a totally different argument now on appeal then was made below Is that correct, I'm suggesting that there. The testimony was as to one proximate cause, whether the last chance by not being admitted is, if you will, not a factual but a legal proximate cause I guess I'm offering that up for your consideration. So say that one more time it's a legal proximate cause rather than a factual proximate cause. Is that what you. Well, I think there can be more than one proximate cause. But in this case, there was no autopsy. Below was that there was one proximate cause of death. I mean, isn't that why the plaintiff plaintiff's counsel below agreed to the short form instruction. I don't think I. In the end, you requested the long form instruction. But I think it becomes. I'm sorry to interrupt. Go ahead. I believe it's, it's really, um, I know I've argued in the brief that you know with the, with the short form 15.01 instruction. It left the jury to believe that it was limited to finding the one proximate cause. And that was prejudicial. Without the additional non pattern instruction on product on last chance. But how was that prejudicial I mean isn't this what distinguishes the case from Bailey where there was more than one proximate cause of death. There were two opinions in Bailey as to what caused the death. This is a totally different fact situation is it that in so far as there's one proximate cause. Yes. Well, and the case, the case is distinguishable. Also, in, in that there was a recommendation that the patient be hospitalized and the patient refused hospitalization. That's a totally different effect better than we have here. When there was no suggestion by the doctor that the victim. I'm sorry the plaintiff should have been hospitalized. When we have one proximate cause. I think, I think it becomes even more imperative that the non IPI instruction be given about the last chance of survival. Why is that. Why is that. Because the jury may think not realize that that's what can be considered approximate cause. And that the only thing they can consider as the proximate cause is the actual hypertension leading to the arrhythmia and stopping of the heart. And if they believe that they're misled by the instruction, because they have to consider that as the only proximate cause, and they don't consider them a last chance of survival issue. And so I think it prejudices the plaintiff, if the jury believes that there's only one proximate cause, and that that's that does not include a last chance of survival. I think it's even worse than where you use the long form, where they, they realize there may be more than one proximate cause. You mentioned you said in the end, plaintiffs counsel requested the long form instruction but that's not borne out by the record. Is it certainly not as I've read the record. Well, I, I, there was a colloquy between the court and counsel and at the end. The last thing. Mr. Gilear said was, he would prefer the long form be used. My reading of the record shows that the third instruction conference began at page 742 of the record, and at 743 the judge says he'll give the short form 1501 and plaintiffs counsel doesn't object. After the colloquy regarding the non IPI, then plaintiffs counsel never retentive the long form. There was certainly a long discussion at the first jury instruction conference about the long form the wording of the long form was put over to the next day, then there was a second instructions conference, but I don't see in the record where it was ever retentive. The long form. Yes, if you could. I don't think the long form was necessary. Had the had the last chance instruct the non pattern instruction been given. Okay, but the fact remains, he did say he preferred. Yes. He preferred the long form if he wasn't going to get the non IPI correct. That's my understanding and reading of the record, but he didn't, but he didn't tender it as a, as an offer that was actually denied at that point. No, he did not tender the long form, but he entered the tender the non pattern last chance instruction. I have another question on actually be one of the other issues you argue in your brief counsel. How was the deputy coroner qualified to testify to the presence of these ischemic changes. See or know anything about her background, do we not really other than what was represented to the court by by defendants counselors are lacking the expertise. Now his argument. Mr. Gleer made an informal offer of proof, if you will, at page 396 of the transcript, where it says, we're ready. We have Sarah Penley, the deputy coroner ready to testify. She will testify that she performed the coroner examination. He would testify that she's got the training and experience to do that. You testify about notes, she'll testify she knows what ischemic changes look like. And that's why she wrote ischemic changes on the lower extremities. Right. Right lower extremity she wrote scar. She knows what a scar looks like and she would also testify, concerning that she took the photographs, which reflect the darkening of the lower extremities. Judge didn't buy her. I'm sorry, Judge McLaren, go ahead, where the photographs that she took ever given to your expert witnesses, and were they asked to opine as to what those photographs portrayed. I would have to go through the testimony as to what they reviewed for their opinions. I don't know whether they were or not I believe that they were. Well if they were then wouldn't this then be cumulative if you had your experts testifying as to what the photographs depicted. The, the experts weren't asked about the photographs. I thought you said they were. No, they reviewed those as part of their review in preparation for trial but they didn't specifically testify about the photographs. And, and the point is, if they were aware of them, and you are having problems with having the deputy coroner testify. Is there some reason why the experts weren't asked to opine. We, the, the reason we wanted those introduced was to use during cross examination of the defendant. And that's why, and our experts had already testified at that point. I don't know if the information however didn't actually get in through defense witness the expert witness doctor, as it she she shark he shall see ICHO and I'm not sure how to pronounce it. On cross examination. He said he noted the corners report and disagreed with it and talked about. He said, Eddie did not have ischemic changes on his legs, and the corners report said he did. And he said he disputed that and he testified that the marks really were more consistent with stasis dermatitis and lividity. So actually, the jury heard the information, although it did not come in through plaintiff's witness. Isn't that correct. It came in with. Well, not wasn't used for cross examination of the defendant. Well, in essence, the trial judge didn't bar her from testifying as to her observations. But when the trial court expressed reservation plaintiff's counsel chose not to call her isn't that right. He, the trial court had already ruled on motions and limiting and I think we felt included. At that point from being able to able to question, or are there any other questions. Not at this time. Thank you. Thank you, Mr. Drake, your time is up, you'll be given an opportunity to make rebuttal. Thank you. Thank you. The grand you may proceed. Thank you, Your Honor. Again Karen to grant on behalf of Dr loud and infinity healthcare physicians. The defendants appellees may please the court council. I will go directly to the points initially that were raised by the courts on the, on the causation, or rather on the instruction issue. It is correct that throughout the instructions conferences plaintiff's counsel took the position that there was only only one cause in fact I'll quote the plaintiff's counsel at page 630 634. He argued there was no evidence of any other thing person action event, or omission that caused the death. And that was that also was the court's view in determining that the short form of 1501 covered the issue that was presented by the plaintiffs and the court looked at the entirety of the instructions and determined, not only that 1501 short form was appropriate, but they had a non IPI causation instruction, simply was not necessary. Now, as it to just to clear up the chronology of when there, whether or there was or was not an objection to proceeding with a short form during the instructions conferences, the, the plaintiff cited record page 369 in in the reply and said, and also counsel repeated today that at the end of that conference, there was a reassertion of the objection to going with a short form and that's not correct. The, the conference that day keeps going, and there's there's you know that and the court is very well aware I'm sure the council and and the trial court went back and forth and discuss the issue. And, and then after the court said that once again observed that plaintiff is not alleging any other causes plaintiff's counsel said, and this is after this is appears on page 370 of the record. This is after the, the preferred comment where, where, where counsel said, I would prefer the dish the long form council said, well I'm obliged to take it, meaning the bracketed material out because I wouldn't use it unless Holton or beard suggested you have to. And we apparently now have agreed, you don't have to. So, that's, that is, that came after the the point where plaintiff said that that instruction conference ended and that's just not accurate. And then it fast forward to the, the next instruction conference, where the, where the court just made the determination that it would refuse the non IPI, there was no indication at that time that the preferred comment was in the previous conference, there was no indication at that time that plaintiff's counsel were re tendering 1501. So, it seems to me that that is a fairly clear waiver of the instructional issue altogether. So, you know, the, the position that the plaintiff is taking on the proximate cause instruction is that the Bailey decision, which didn't come down until after the notice of appeal was filed instructs that there should be a non IPI instruction permitted in this case. Well, it doesn't fit the evidence. And even if the court were to focus simply on the the line of cases and I'm not going to go through them, the court knows them. You know, if there's any, you know, question, it's all set out in the briefs, the line of cases after Holton makes very clear that, you know, and again, what the plaintiff has did in the trial court and is also presented in the appeal is to call the non IPI instruction a Holton instruction. Well, I, I submit that that actually is a misnomer because the Holton instructions, if it makes very clear the Supreme Court's decision are the pattern instructions and that's the linchpin of the post Holton pre Bailey appellate cases affirming exactly what the trial judge here. Excuse me. I have a question. Without this non IPI instruction. Specifically on the language of last chance. The jury for to only get the information through what counsel argues on either opening or closing and the jury then here's an instruction from the judge that says opening and closing arguments aren't evidence. So what is the jury left with. They're not left with sufficient information are they to be really truly consider last chance. And what that instruction would would mean. I disagree that the jury isn't fully instructed, especially in a case like like this, where what we're talking about is a single cause it's identified by the plaintiff, and actually, if you know looking at all five of the physicians who testified. The only the only causation testimony came from plaintiff's expert, Dr. Matthews and of course we challenged it as speculation, but Dr. Matthews opined that hypoxia led to cardiac arrhythmia, there was nothing else. So, so, to the extent that the instruction says a cause that means a cause or doesn't matter if there's other causes a cause and the natural or normal ordinary course of events, the jury. I think it's it's quite clear from the precedent, and I think it's it's also clear from the record here that the jury doesn't need to be told the specific Lost chance formulation. And the reason that the appellate decisions before Bailey came to that conclusion. It's because Holton made so clear that the Lost chance theory, which is not a separate theory. It's not a separate or independent formulation. It's just a concept that comes into the proximate cause analysis and and therefore the the appellate court subsequently decided In all of the cases up until Bailey, that there is no there. There's no reason to interfere with a trial court's decision to reject the non IPI instruction. And, you know, the other interesting thing about Holton and I, you know, with I respectfully have to disagree with the first districts analysis and Bailey, which barely discussed Holton. The the Holton court looked it didn't it didn't have before it attended non IPI instruction, but look very closely at the proximate cause instructions. And there wasn't a peep out of the court that there that there was any reason to go anywhere other than the pattern instructions. So I think that that to the contrary of the plaintiff's theory wasn't presented. I think, had there been a non IPI instruction, it would have given undue emphasis to the plaintiff's theory and which is covered by the pattern instructions and may and may have confused the jury anything given Well, opposing counsel argued this morning that in essence, maybe there were two proximate causes more than one. In fact, and one being the hypoxia hypertension, which led to the hypoxia and then a heart attack and then the the last chance to failure to hospitalized. How do you respond to that argument. Well, I'll So therefore, there was a need. This was more like Bailey and there was a need for the non IPI instruction regarding the last chance the short form really wouldn't have been adequate. Well, that's a new characterization, contrary to what the plaintiff argued throughout below. It also is at odds with the issues instruction that was tendered by the plaintiff to the court, which was a single issue for the court to determine or for the jury to determine and and didn't say anything about Dr. So I don't think that that argument should should carry the day here, Your Honor. And I will, if the court doesn't have more questions for me on the on the question of the instruction, which I think was entirely appropriate and certainly within the courts discretion to give. I'll briefly address the the issue of this testimony from about the Miss Penley. I have a question. Exactly. On that topic. Miss Penley as deputy coroner through her experience knew what a schemic changes were. Why couldn't she testify to that. I mean, wouldn't that be similar to a police officer who has a lot of experience with homicides testifying to lividity when he or she would see it. I disagree, Your Honor, because, you know, what we have here, we're talking about a medical negligence case. And there are standards that are required before a witness is qualified to testify to medical conclusions, and that clearly is a is a medical opinion. Miss Penley and there's there's there's almost nothing but a few comments about her background, but we do know this. She had no medical training. She wasn't a nurse. She wasn't a physician. And there was no there was no reason for the court to to permit the plaintiff to essentially raise the specter of a standard of care criticism through the back door through this testimony of Miss Penley through this through this conclusion. So I don't believe that that that the court was an error at all with respect to was with respect to Miss Penley. Excuse me. But as a deputy coroner, her primary responsibility, I think, was identified as death investigations. Obviously, they're not going to be looking at live people in the coroner's office. So wouldn't this be a piece of evidence of a death that she found in her death investigation? And that being the case within her job requirements, why couldn't she testify to that? Well, she can't testify to conclusions, but even but but the fact of her let's let's set aside the lack of foundation, the lack of competence for her to testify to a medical conclusion, which I think or a medical opinion, which I think was entirely within the trial courts discretion. The fact of the matter is that there was no testimony and plaintiff's counsel readily acknowledge this. There was no testimony is linking the observations that Miss Penley made at the time of her examination of the external examination of the decedent to what to anything that Dr. Loud did or would have observed at the time of her examination. And in the absence of that link, the trial judge was certainly correct and absolutely within his discretion to say there's no relevance here. Whatever thought that she may have had about what the discoloration on the decedent's legs was or was not or what it indicated, there was no link. And that was the problem. The plaintiff's experts did not provide that link. And I want to correct one comment that counsel made. The plaintiff agreed, and this came out a couple of times, that no expert was given the photos. And one of the places that he acknowledged this was at page 407 of the record. And as far as the, I know my time is running out, so I want to also make this point. As far as the motion in limine was concerned, there was a question about that. And counsel did not object to the motion in limine that barred lay witnesses from giving medical opinions. So, once again, we have a waiver here. But what may, what I submit is an even more deeper problem for the plaintiff on this record. Not only is the plaintiff relying on some general comments about what Ms. Penley may have testified to, rather than an offer of proof, there was no offer of proof about what would have been elicited in cross-examination of either Dr. Loud or of either of the defense experts had counsel been able to, been permitted to raise Ms. Penley's medical conclusions. Of course, we do know that Dr. Cishan was questioned by plaintiff's counsel. And I suppose if we anticipate that Dr. Loud would have given the same response to a question about what the discoloration showed, we would have had a similar answer from Dr. Loud, which would establish that there's no reason to conclude that Dr. Loud's testimony would have been changed had there been cross-examination. But there's zero in terms of a offer of proof. So, again, perhaps even the entire issue is academic because there's no basis for concluding that there would have been some information to the jury that would have affected the outcome of the case. Your time is up. Are there any other questions from the panel? I don't have any. No, thank you. Thank you, Your Honor. Thank you, counsel. Mr. Drank, you may proceed with rebuttal. The photographs were provided to our experts and to all experts through the 213F disclosure. So if they reviewed that, they weren't provided at trial, but they had had an opportunity to see the photographs. The order barring lay witnesses, if she would have been qualified, the deputy coroner would not have been a lay witness. She would have been an expert witness, so she wouldn't have been barred from testifying to what she described as ischemic changes. Well, Mr. Drank, why wasn't that raised? I mean, that could have been raised. She could have testified as to her qualifications, but you chose not to call her, or counsel chose not to call her, correct? I think that that was raised, and it was raised again in the post-trial motion concerning Dr. Pedley. I mean, Deputy Coroner Pedley. The reason her testimony was desired is because Dr. Loud testified that she saw the decedent from head to toe. That was sometime shortly after 10 a.m., and she testified had those changes on his lower extremities been present or ischemic changes been present, it would have changed her discharge order, and we wanted to use those to impeach her. Except counsel, as Justice Hutchinson brought up, the deputy coroner did not view the decedent's body until the day afterwards. So, that was 24 hours, at least 24 hours later. I think that raises a question. After death. I think that raises a question of, if they're caused by high pressure, how they would occur after death. Because once your heart stops pumping, I don't think you have high blood pressure going. But in any event... Are you a medical expert? I have trouble diagnosing my own headaches. Okay. In any event, the last point is, counsel eloquently told us that this, the Holton's instructions and the Lost Chance Doctrine are really a concept in proximate cause analysis. That may be true. Is a jury supposed to understand that? A concept in proximate cause analysis? Wow. Without an instruction, a non-pattern instruction, on the issue of lost chance, I think it's going to be very rare that a plaintiff prevails in a medical malpractice case. And I think that's why the Bailey Court recognized and said, if we continue to follow Satira and the cases that found no error where a trial court gives IPI 15.01 and refuses to give a non-pattern instruction on the last loss of chance, a plaintiff may never be able to submit an instruction explaining the lost chance theory to the jury. And that's what's happened. It continues to happen. And the court in Bailey recognized that and said, no, these juries need to understand that lost chance is a concept in their proximate cause analysis. And so I believe that this court should follow Bailey. Well, it's a concept you said in proximate cause analysis, but here it was presented as the proximate cause, a proximate cause. That's why the trial court gave the short form version. Well, you know, I think, I think when I answered that earlier, I said the proximate cause was the hypoxia leading to the cardiac arrhythmia. If there's only one proximate. So are you saying if there's just one proximate cause? It shouldn't matter if there's one or more. I think the jury should be instructed in a lost chance case about what that theory is and whether it applies or not as to the proximate cause instruction. I think right now we have the Bailey cases before the Supreme Court, as you know. I checked yesterday. It doesn't, nothing seems to have happened yet. The leave to appeal was was granted. The PLA was granted, right? Right, right. And I suggest that that would be pretty much dispositive of the instant case. Well, but I don't want to repeat totally what Justice Enoff had done earlier, but didn't she establish that the facts are significantly different than this particular situation? Well, underlying facts in all cases are different, but the issue is the same as whether when you have a lost chance case, whether a non-pattern instruction is appropriate, regardless of whether you use the long or short form 15.01. Your time is up. Are there any other questions from the panel? No. No, thank you. Thank you. We've had oral argument. We will take the case under advisement and render a disposition in apt time. Mr. Clerk, will you please close out the proceedings? Thank you, Justices. Thank you.